STATE of Minnesota, Respondent,

v.

Marion DAHM, Appellant.

No. C8–86–275.

Court of Appeals of Minnesota.

Oct. 21, 1986.

Hubert H. Humphrey, III, Atty. Gen., James B. Early, Sp. Asst. Atty. Gen., St. Paul, James H. Martin, Stevens Co. Atty., Morris, for respondent.

Richard H. Hilleren, Barnard, Hilleren & Spates, P.A., Benson, for appellant.

Heard, considered and decided by NIER-ENGARTEN, P.J., and WOZNIAK and SEDGWICK, JJ.

SEDGWICK, Judge.

Appellant was convicted of fleeing a police officer in a motor vehicle, reckless driving, and speeding. This appeal is from the judgment of conviction. We affirm.

## FACTS

Appellant is a 67 year-old farmer who was driving his 1972 Lincoln Continental to his farm from his daughter's farm. The car had been jump-started because the battery was dead and the alternator was broken.

While driving north on Stevens County Road 13, he passed a Stevens County patrol car headed south. The patrol car was driven by Stevens County Deputy Steven Hammond and Reserve Deputy Ron Erickson.

The officers testified that their radar unit showed appellant was driving 67 miles per hour. They made a U-turn, turned on their red light and pursued appellant, who did not stop. They accelerated to 70 miles per hour but were unable to gain on appellant, who was one-half to one-third mile ahead.

The officers turned on their siren and continued to follow appellant at approximately 70 miles per hour without gaining on appellant's car. Appellant finally turned onto a two-lane road where the officers passed him on the left, intending to brake in front of him to force him to stop. Instead of stopping, appellant accelerated and struck the left rear of the squad car, causing its trunk to spring open. He then pulled up to the left of the squad car and turned right, striking it again. Appellant next pulled ahead and struck the left front of the squad car, causing it to swerve. Appellant finally stopped his car at his farmhouse, where he was arrested.

The squad car cost $2,295 to repair.

Appellant's version of the facts is as follows: He was not speeding and did not intend to flee the police. He knew the police wanted him to stop, but he wanted to wait until he got back to his farmhouse because of the condition of his car. He testified he was a "cripple" and does "not like to get stopped out on the road and have to walk home with two broken legs." He made at least 20 hand signals to the officers, indicating that he did not want to stop but wanted them to follow him home because of his engine trouble.

Appellant testified he did not intentionally hit the squad car, but that the squad car lost control because of a mud hole as it passed him. When it pulled in front of him and braked, he braked and turned to the left to avoid contact, but the squad car charged into the right side of his car.

## ISSUES

1. Was there sufficient evidence to convict appellant of fleeing, reckless driving and speeding?

2. Did the trial court err by not giving a "false testimony" jury charge?

## ANALYSIS

1. *Sufficiency of Evidence*

A. *Standard of review*

The standard for reviewing the sufficiency of evidence is as follows:

In reviewing a claim of insufficiency of the evidence, we are limited to ascertaining whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged. * * We cannot retry the facts, but must take the view of the evidence most favorable to the state and must assume that the jury believed the state's witnesses and disbelieved any contradictory evidence. * * * If the jury, giving due regard to the presumption of innocence and to the state's burden of proving the defendant's guilt beyond a reasonable doubt, could reasonably have found the defendant guilty, that verdict will not be reversed.

*State v. Turnipseed,* 297 N.W.2d 308, 313 (Minn.1980) (citations omitted) (quoting *State v. Merrill,* 274 N.W.2d 99, 111 (Minn. 1978)).

### B. *Fleeing a Police Officer*

■ Minn.Stat. § 609.487, subd. 3 (1984) states:

*Fleeing an officer.* Whoever by means of a motor vehicle flees or attempts to flee a peace officer who is acting in the lawful discharge of an official duty, and the perpetrator knows or should reasonably know the same to be a peace officer, may be sentenced to imprisonment for not more than one year or to payment of a fine of not more than $3,000, or both.

The statute defines "flee" to mean

to increase speed, extinguish motor vehicle headlights or taillights, or to use other means with intent to attempt to elude a peace officer following a signal given by any peace officer to the driver of a motor vehicle.

Minn.Stat. § 609.487, subd. 1 (1984).

"With intent to" means that a person "has a purpose to do the thing or cause the result specified or believes that his act, if successful, will cause that result." Minn. Stat. § 609.02, subd. 9(4) (1984).

Appellant testified that he knew the police wanted him to stop, but that he refused to do so because he wanted to get his car home. Based on this and the officers' testimony that he increased his speed while being pursued, a jury could reasonably conclude that appellant was intending to "flee" the officers within the meaning of the statute.

### C. *Reckless Driving*

■ Minn.Stat. § 169.13, subd. 1 (1984), provides:

*Reckless driving.* Any person who drives any vehicle in such a manner as to indicate either a wilful or a wanton disregard for the safety of persons or property is guilty of reckless driving and such reckless driving is a misdemeanor.

The officers testified that appellant led them on a high-speed chase culminating in his hitting their car three times. They testified appellant accelerated to hit them from the rear, "smashed" into them from the side, causing them to lose control, and then clipped the front of their car, almost throwing them into a ditch. We must assume the jury believed the officers' testimony and there is therefore sufficient evidence to convict appellant for reckless driving.

### D. *Speeding*

■ Deputy Hammond testified that he checked the radar unit externally and internally before going on patrol to ensure that it was working properly. Both he and Deputy Erickson testified the radar unit was locked-in with a reading of 67 miles per hour. They further testified they were unable to gain on appellant even though they were going approximately 70 miles per hour. This is sufficient evidence to support a conviction of speeding.

### 2. *Failure to Give "False Testimony" Jury Instruction.*

■ Appellant requested that the judge give this jury instruction: "If a witness has intentionally misrepresented or lied on a material fact all of his testimony may be disregarded." The asserted basis for the instruction was that the officers testified that the road on which the collisions occurred was a township road, but that the road actually was owned by appellant.

The judge properly declined to give this charge. First, appellant misstates the instruction; the jury instruction guide formulates the instruction as follows:

If you find that any witness has willfully testified falsely concerning any material matter, you have a right to distrust the testimony of that witness in other matters, and you may, if you wish, reject all or part of the testimony of that witness, or you may give it such weight as you think it deserves.

4 *Minnesota Practice,* CIV. JIG II, 25 G–S (1974).

Second, appellant cites no authority suggesting the instruction is ever required. It is found only in the civil, not criminal, jury instruction guide, with the comment that the "instruction is optional and should not be given in the typical case." *Id.; see also, e.g., Greenfield v. Unique Theatre Co.,* 146 Minn. 17, 21, 177 N.W. 666, 668 (1920) (instruction is "often of doubtful aid").

Finally, the instruction is inapplicable to these facts. It applies only if a witness has "knowingly and wilfully testified falsely as to a material fact." *State v. Stevens,* 248 Minn. 309, 313, 80 N.W.2d 22, 26 (1956). Assuming the road in question is owned by appellant, there is no indication that the State's witnesses knew this when they testified it was a township road; appellant himself testified he did not believe the officers would know it was actually his private road.

The ownership of the road is also not material. Neither the fleeing nor the reckless driving statutes require that the acts take place on a public road, and appellant was observed speeding on admittedly public roads.

### DECISION

Affirm.